Filed 5/12/20; Certified for Publication 6/3/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| NICOLE G., | B294228 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 18STRO04529) |
| v. | |
| WARREN BRAITHWAITE, | |
| Defendant and Appellant. | |

APPEAL from order of the Superior Court of Los Angeles County, Lynn H. Scaduto, Judge.  Affirmed.

Willoughby & Associates, Anthony Willoughby and Anthony Willoughby II for Defendant and Appellant.

ADLI Law Group and Marina Manoukian for Plaintiff and Respondent.

————————————

## INTRODUCTION

Warren Braithwaite and his long-term girlfriend Nicole G. resided at a property they co-owned. After contentious arguments and stalking incidents, Nicole retained counsel to file a request for a domestic violence restraining order (DVRO) and moved out of their shared property amidst their break-up. Warren and Nicole each requested DVROs against the other in connection with overlapping events and incidents.

After concluding trial on both parties' DVRO requests, the trial court denied Warren's requested DVRO and granted Nicole's requested DVRO against Warren. As part of the DVRO protecting Nicole, the trial court ordered Warren to move out of the property, allowing Nicole to move back in and resume her residence there. Meanwhile, the parties are involved in a civil suit for partition and quiet title in Los Angeles Superior Court Case No. BC719593, regarding the issue of title to the property.

Warren appeals from the DVRO issued against him, arguing that the trial court erred by ordering him to move out of the property and by awarding use and possession of the property to Nicole. He contends the issue of ownership and possession of the property should be handled by the ongoing civil suit, and a DVRO is "not a tool to dispute ownership and control of property." The denial of Warren's request for a DVRO against Nicole has not been appealed and is not at issue here.

We affirm. The Domestic Violence Prevention Act and Family Code[1] sections 6340, 6321, and 6324 authorize a court to order the restrained party to move out of property and allow the protected party to use and possess the property. While

---

[1] All further statutory references are to the Family Code, unless otherwise stated.

ownership of the property will be determined in the pending civil suit, the trial court had authority to make orders about the use and possession of the property. It properly did so.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Relevant Background Information[2]*

In 2010, Warren and Nicole began dating. Warren was married at the time, but "was unhappy and . . . looking for someone else."

Warren found a one-bedroom apartment for Nicole, with high monthly rent that "fit his taste"; he insisted Nicole move to this new apartment because he did not like where Nicole lived. He co-signed for the apartment, paid the rent, and paid for new furnishings and electronic devices. Warren soon became "very possessive" and would demand that Nicole unlock her phone and give it to him. When she once refused, he became "irate" and "picked up a 9-pound weight bar" and threatened to "smash" her car if she did not hand over her phone. When Nicole did not give in, Warren used the weight bar to smash the glass coffee table.

---

[2] It is appellant's responsibility to designate a clerk's transcript that includes all documents and evidence necessary for our understanding and proper consideration of the factual and legal issues before us. Based on a review of the record, many documents were not provided by Warren by way of the clerk's transcript, including but not limited to Warren's DVRO request and his declaration, filed May 1, 2018, and the temporary restraining order against Nicole, granted May 1, 2018. The parties refer to these pleadings in their appellate briefs; further, a review of the record reflects the court also relied upon evidence included in these omitted pleadings in making its DVRO findings and credibility determinations on November 27, 2018.

3

In June 2011, Warren was arrested for drug trafficking. During his five years of incarceration, Nicole "did as he instructed" with respect to his finances, property mortgages, and legal fees and expenses.

While Warren was imprisoned, Nicole purchased a condominium located on Temple Terrace in Los Angeles, California (the Property), as her sole and separate property. As the down payment, she used the settlement proceeds she had received from an employment case. Warren did not contribute anything towards the purchase of the Property. Nicole moved into the Property, paid the mortgage, property taxes, insurance, and all other household expenses for the Property.

Around the time Nicole purchased the Property, Warren's wife confronted Warren about Nicole because "she saw money going to Nicole." As a result, Warren's wife filed for divorce.

Upon Warren's release from prison in March 2016, Nicole picked him up, helped him move in with her, and "was there for him." She helped him establish his construction company.

One year later, in April 2017, Warren presented Nicole with a joint tenancy agreement and a quitclaim deed transferring 50 percent ownership of the Property to Warren as a gift without consideration. Nicole maintained she was not given the opportunity to consult with an attorney or review the paperwork. Instead, she was "driven to a notary public to execute the documents on the same day." She was "too scared to deny Warren's demand" and signed the paperwork.

Warren and Nicole soon began to experience relationship issues, as Warren was angry with Nicole for seeing other men during his incarceration.

B.    *Nicole's Request for Restraining Order*

On June 27, 2018, Nicole filed her request for a domestic violence restraining order (DVRO) against Warren. She said Warren had stalked her, physically abused her, extorted money from her and coerced her into transferring the Property to him. She described the following instances of "recent abuse, stalking and harassment" she suffered from Warren:

- On Valentine's Day in 2018, Warren and Nicole had a "big argument," as a result of which Nicole left the Property and drove to her father's home in the Bay Area. She contended Warren "followed" her there and made promises to her and her father that he would "stop tracking" her.

- On March 18, 2018, Nicole told Warren she lost her phone earlier that day when she had gone to Urgent Care to be treated for the flu. Warren returned shortly thereafter and said he "tracked [her] phone" and that it was "still in the house." She checked and realized he was correct.

- On April 13, 2018, Warren called Nicole and told her when he drove past her place of employment, he saw her standing next to a man smoking a cigar—a man she was romantically involved with in the past. Warren also told Nicole he heard her through her cell phone "talking to a guy at work with an accent."

- On April 30, 2018, the day they ultimately broke up, Warrena "repeatedly" called Nicole, asking her where she was. She told him she was in Pasadena taking care of personal business. Soon, she pulled into a gas station near the Property and saw Warren pull up right behind her. She believed Warren was tracking her movements and

stalking her, so she drove to the Pasadena police station "to report his stalking and abuse." She then called Warren and told him she was moving out.

- On May 4, 2018, she returned to the Property and realized Warren had changed the locks. She was unable to retrieve her belongings.

- On May 5, 2018, while Nicole was at a Big 5 store, Warren "showed up again," approaching her at the cashier and arguing about a home insurance check. She believed he was "tracking and stalking" her, as he "showed up there at the exact moment when [she] was there."

- On May 22, 2018, after returning from a trip to Las Vegas, she saw "a lot of missed calls from Warren and multiple texts and missed calls from an unknown 925 area code number" including texts such as, "Vegas huh?" Another text message stated, "nice air mattress"; according to Nicole, this text was meant to show her that Warren knew she rented an apartment and had to use an air mattress as a bed. She believed "Warren was tracking [her] location."

Given the history of their relationship and "the fact that he is also a convicted felon," Nicole felt "terrified" of Warren. She requested the court order Warren not to harass, attack, strike, threaten, assault, hit, follow, stalk, surveil or disturb her. She also requested the court order Warren not to contact her, directly or indirectly, in any way. She requested a 100-yard stay-away order from her person, home, vehicle and workplace. And finally, she requested the court order Warren to move out of the Property, as she was owner of record, and award her "temporary use, possession, and control" of the Property.

C. *Trial Court Proceedings*

The combined trial proceedings on Warren's and Nicole's respective DVRO requests took place on September 21, October 24 and 25, November 26 and 27, 2018. During trial, both parties testified, along with Nicole's half-sister and father and Warren's ex-wife and sister. A responding police officer from the Los Angeles Police Department (L.A.P.D.) also testified about his interactions with both parties. We summarize their testimony, in relevant part.

Nicole's half-sister Roxanne testified Warren told her he changed the locks to the Property because Nicole "shouldn't be able to come in and out as she pleases." Warren told Roxanne he "wasn't going to pay the mortgage so that the condo went into foreclosure." Roxanne also testified Nicole had confided in her about Warren having "hit her, he threatened her and was abusive." Warren struck Nicole after he "found out that she'd been with other guys while he was in prison." Nicole had also confided that she "was forced to sign over half of the condo."

Roxanne testified she contacted Warren after learning about the ongoing abuse. During that call, Warren "admitted to hitting her. He said that he'd done it once and he wouldn't do it again." He also discussed the many ways he would track her.

Ricardo Verduzco, an officer with the L.A.P.D. for over 22 years, received a radio call to meet Nicole at the Property and perform a "civil standby" while she had a locksmith change the locks to the Property. Nicole told the officer she "got a

7

restraining order overturned" and needed to get her things.[3] Officer Verduzco testified he received another radio call the following morning about the same Property location; this time, Warren was the caller and reported a violation of a restraining order, as someone had damaged the locks and entered the Property.

Warren, then 46 years old, testified. In February 2018 he had "made a conscious decision" that he was going to leave Nicole after he "found out Nicole had slept with her former boss and co-worker." He planned to return to his ex-wife. He recalled telling Nicole on April 23, 2018 that he wanted to end the relationship with her. He told Nicole, "I am going to work it out with Elsa, and I want us to sell this condo so I can get my money"; in response, Nicole "just went bananas" and threw a metal flask at Warren. A week later, on April 30, Warren received a photograph from Nicole via Whatsapp that showed her holding an AR-15; he believed it was a threat.

Warren confirmed Nicole had purchased the Property as her sole and separate property. He confirmed having presented Nicole with a quitclaim deed to deed half the property ownership to him.

He testified he had never tracked Nicole's location or followed her during their relationship. When asked whether he has ever put his hands on Nicole, Warren said, "No." However, his counsel reminded him, "Well, then, one time I think you indicated I think you pushed her. Let's acknowledge that[,]"

---

[3]     We surmise Nicole was referring to the temporary restraining order the court had granted to protect Warren from Nicole until the hearing date on the DVRO. The restraining order against Nicole was then set aside on May 22, 2018.

8

Warren immediately confirmed having previously pushed Nicole, but as a means to protect himself: she "ripped out my skin."

Nicole testified to being physically abused by Warren at a nightclub during a New Year's Eve party; she recalled confronting him about a text message he received from his ex-wife, which caused Warren to respond with "rage." She testified: Warren "grabbed me and he lifted me up between – by my torso. And he grabs me and heads me out the double doors head first. And I'm screaming for him to let me go because I didn't understand why he had grabbed me when we were only in a conversation about this text. And . . . finally, one of his friends told him to let me go."

Nicole denied Warren ever told her on April 23, 2018 that he wanted to break up. She also denied throwing a flask or bottle at him. She described how she decided to leave and began packing up her belongings and "items that he would not see," to move them to her new apartment "without his knowledge." Warren is a "very big man" and Nicole testified she was "intimidated and afraid" of him," especially because he would stalk her and track her movements. She simultaneously retained counsel and discussed filing a restraining order. She explained she used a "coping method" whereby she knew she was leaving and refrained from putting herself "in any . . . situation that was going to flare him up."

She believed Warren had "some kind of hacker guy that's got into all [her] devices – digital devices, [her] phones, [her] computers." She also testified having personally seen an app on Warren's phone that "literally downloads [her] phone information in realtime onto his phone."

She explained she sent the photo of herself holding an AR-15 to Warren on April 30, 2018 because he did not believe her when she told him two days prior that she had previously shot that weapon at a social event. Nicole testified she always tried to prove to Warren that she was being honest, as a result of the past; "he kept bringing up my past over and over again throughout the course of the years [and] accused me of lying." That was why she felt it important to show him she was telling the truth about shooting the AR-15.

The court admitted many exhibits into evidence, including a text message conversation between Nicole and Warren, where Nicole says, "it's over", to which Warren responds, "Nicole, can you just call my please? [Why] can't you see a difference man. I am not even following you. I am not coming behind you and I just need to talk to you. It's not fair." Nicole texted Warren she was "staying at [her] dad's until [he] stops tracking" her.

D.    *Trial Court's Ruling*

On November 27, 2018, the trial court denied Warren's request for a DVRO against Nicole, finding insufficient evidence of acts of domestic abuse by her. The court found Warren's testimony about feeling threatened by the photo of Nicole holding an AR-15 "hurt his credibility", as the court believed Warren "adjusted his testimony to fit the evidence as it came in."

The trial court granted Nicole's DVRO request and issued the DVRO against Warren for a period of five years; it is set to expire on November 27, 2023.

The trial court found "there have been both acts of physical violence here as well as stalking behavior" by Warren. The court found there was a "pattern" since Warren's release from his incarceration "of an increasing level through different types of

10

acts of establishing and maintaining control" over Nicole. The court told Warren: "I think she's genuinely afraid of you, and I think she was throughout at least the last year and a half. And, for that reason, I find that a restraining order is necessary here."

Warren was ordered to stay at least 100 yards away from Nicole, her home, car, and place of work. The DVRO also prohibited Warren from: (1) harassing, attacking, threatening, assaulting, keeping under surveillance, following stalking Nicole; (2) contacting Nicole either directly or indirectly, by any means; and (3) taking any action, directly or through others, to obtain Nicole's location.

The DVRO also included a "move-out order", requiring Warren to immediately move out of the Property. The DVRO also included a "property control" order, wherein only Nicole was allowed the "use, control, and possess[ion]" of the Property.

While issuing the DVRO, the court made credibility determinations, finding the testimony of Nicole's half-sister and her corroboration of events described by Nicole "highly credible."

This appeal followed.

## DISCUSSION

Warren contends the trial court erred by issuing a DVRO that requires Warren to move out of the Property and awards Nicole control, use, and possession of the Property. He argues the DVRO was made "without sufficient findings on the record and without sufficient evidence being presented at trial."

We disagree.

A. *Applicable Law and Standard of Review*

The Domestic Violence Prevention Act (§ 6200 et seq.) (hereinafter DVPA) exists "to prevent acts of domestic violence,

11

abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) Under the DVPA, a court is authorized to issue a restraining order enjoining a party from engaging in specific acts of harassment or abuse against a cohabitant or former cohabitant. (§§ 6211, subd. (b), 6218, 6322, 6340, subd. (a)(1).)

The DVPA similarly authorizes a court to issue a restraining order excluding a person from the "family dwelling" or "common dwelling of both parties" (§§ 6321, 6218, subd. (b)), "on the conditions the court determines." (§ 6321, subd. (a).) The court may issue an exclusion order only on a showing that: 1) the party who will stay in the dwelling has a right under color of law to possess the property; 2) the party to be excluded has assaulted or threatens to assault the other party; and 3) physical or emotional harm would otherwise result to the other party. (§ 6321, subd. (b)(1)-(3); § 6340, subd. (a)(1).) And finally, the court also has authority to issue orders determining the temporary use, possession, and control of real or personal property of the parties and the payment of any liens or encumbrances coming due during the period the order is in effect. (§ 6324.)

The court's issuance of a protective order under the DVPA is a discretionary matter. (§ 6300.) " 'A trial court's exercise of discretion will not be disturbed on appeal unless, *as a matter of law,* an abuse of discretion is shown—i.e.,—where, considering all the relevant circumstances, the court has "exceeded the bounds of reason" or it can "fairly be said" that no judge would reasonably make the same order under the same circumstances.' " (*In re*

12

*Marriage of Smith* (1990) 225 Cal.App.3d 469, 480.) " 'So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it.' " (*Ibid.*)  We resolve all conflicts in the evidence in favor of the prevailing party, and indulge all legitimate and reasonable inferences in favor of upholding the trial court's findings.  (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 31.)

B.    *The Trial Court Did Not Abuse its Discretion in Issuing Nicole's Requested DVRO, including the Move-Out Order, Against Warren.*

Warren argues the trial court granted Nicole's requested DVRO, including the order granting her exclusive use and possession of the Property, "without [having made] sufficient findings on the record."  He contends Nicole "left the property long before the matter came to trial" and all "available testimony" demonstrates Warren and his sister were the occupants of the Property at the time of the proceedings; based on the foregoing, Warren believes the trial court erred in granting Nicole exclusive use of the property because the "mere fact that [Nicole] resided on the Subject Property at one time in the past does not entitle her to current possession and control."

On this record, we cannot say the court abused its discretion.  There was substantial evidence of Warren's past acts toward Nicole, which constituted threatening, stalking, and abusive behavior.  The testimony and evidence in the record demonstrate Nicole had planned to reach a place of safety, i.e., a new apartment to which she was slowly moving her belongings, before communicating her desire to break-up to Warren.  The court found evidence of both physical abuse and stalking behavior, and we agree.  Warren's own text messages to Nicole,

13

pleading for her to "see a difference" in him as he is "not even following" her and is "not coming behind" her, confirm to us that his stalking and tracking behavior was an ongoing issue. The testimony provided by Nicole's sister—testimony the trial court found highly credible—corroborated Nicole's testimony that Warren employed many ways to track her.

The DVRO against Warren, including an order requiring Warren to move out of the Property and granting Nicole temporary use and possession of the property, falls within the trial court's authority provided by the DVPA. (See §§ 6321, 6218, subd. (b), 6340, subd. (a)(1).) Indeed, Judicial Council form DV-100 includes item No. 8 entitled "Move-Out Order" and item No. 14 entitled "Property Control" allowing those applying for a DVRO to request orders regarding the "common dwelling of both parties." (§ 6321, subd. (a).)

More specifically, section 6324 authorizes the court to issue orders determining the temporary use, possession, and control of real property. Here, that's exactly what the court did by providing Nicole with temporary control and possession of the Property.

Further, the three requirements set forth in section 6321, subdivision (b), were met in the case before us, allowing for the trial court to issue an order excluding Warren from the Property. In satisfaction of section 6321, subdivision (b)(1), there was evidence the "party who will stay in the dwelling" (i.e., Nicole) has a right under color of law to use and possess the property. Here, Nicole stated in her declaration in support of the DVRO request that she purchased the Property as her sole and separate property, and currently owns it in joint tenancy with Warren. Warren himself testified Nicole had purchased the Property as

14

her sole and separate property and currently co-owned the Property. In satisfaction of section 6321, subdivision (b)(2), there was ample evidence Warren (the party to be excluded) had assaulted the other party (Nicole). And in satisfaction of the final requirement—section 6321, subdivision (b)(3), there was evidence of continued physical/emotional harm should the parties reside in the co-owned Property together. Based on the record, Nicole continued to pay for the mortgage and household expenses, although she could not reside there while Warren was present. Nicole's sister testified Warren told her he did not care if the house ended up in foreclosure. Based on the past acts of domestic violence and stalking, further harm would have resulted to Nicole if she had resumed her residence in the Property without an order also excluding Warren.

Based on the foregoing, the DVRO, including the move-out order and use/possession order, did not exceed the bounds of reason. Nicole was paying for the mortgage and property taxes for the Property. Her decision to move-out of the shared Property to escape further abuse and stalking amidst the filing of her DVRO request does not bar a trial court from using its authority to award a protected party with temporary use, control, and possession of a Property as part of a DVRO. We offer no opinion on the parties' pending civil action over title to and ownership of the Property. But until that case concludes, Nicole has temporary possession and use of the Property pursuant to the terms of the November 27, 2018 DVRO granted by the trial court.

During oral argument, Nicole argued she is entitled to an award of attorney fees and costs incurred in connection with opposing Warren's appeal, per section 6344.  As the prevailing party on appeal, Nicole may file a motion for attorney fees on appeal pursuant to California Rules of Court, rule 3.1702(c), and section 6344.  (See also *Butler-Rupp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 924 ["trial courts retain discretion to award attorney fees incurred on appeal to the eventual prevailing party"].)

## DISPOSITION

The order is affirmed.  Respondent Nicole G. is awarded costs on appeal per California Rules of Court, rule 8.278.


STRATTON, J.

We concur:



GRIMES, Acting P. J.



WILEY, J.

16

Filed 6/3/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| NICOLE G., | B294228 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 8STRO04529) |
| v. | |
| WARREN BRAITHWAITE, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on May 12, 2020, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

_____

GRIMES, Acting, P. J.          STRATTON, J.          WILEY, J.